**EXHIBIT 2**

**BAYER'S STATEMENT OF ISSUES OF FACT THAT REMAIN TO BE LITIGATED**

To the extent that Bayer's statement of issues of law contain issues of fact, those issues are incorporated herein by reference. Should the Court determine that any issue identified in this list as an issue of fact is more properly considered an issue of law, Bayer incorporates such issues by reference into its statement of issues of law.

**I.     OBVIOUSNESS**

1. The scope of the relevant field of art regarding the asserted claims of the '517 patent as of July 15, 1988.

2. The qualifications of the person of ordinary skill in the art.[1]

3. Whether Reddy has proven by clear and convincing evidence that the invention claimed in the '517 patent would have been obvious to the person of ordinary skill in the art as of July 15, 1988 in light of the scope and content of the prior art, the differences between each asserted claim and the prior art, the level of ordinary skill in the art at that time, the properties of the claimed compounds, and objective indicia of nonobviousness.

4. What the art taught a person of ordinary skill in the art as of July 15, 1988 regarding the design and development of new quinolone antibacterial agents and the conventional wisdom in the field at that time.

5. Whether Reddy has proven by clear and convincing evidence that there was a suggestion, motivation, or teaching in the art to select the Sankyo EP 0 241 206 application or Dainippon Abstracts (AT-3295) *Recent Advances in Chemotherapy,* Proceedings

---

[1] As used herein, "the person of ordinary skill in the art" refers to said person on July 15, 1988.

of the 14th International Congress of Chemotherapy (Kyoto, 1985) ("1985 Dainippon Abstract") as a starting point for the design and development of a new quinolone antibacterial agent.

   6. Whether Reddy has proven by clear and convincing evidence that there was a suggestion, motivation, or teaching in the art to select compound 1-130 of the Sankyo EP 0 241 206 application or compound AT-3295 of the 1985 Dainippon Abstract as a starting point for the design and development of a new quinolone antibacterial agent.

   7. Whether the conventional wisdom in the art included particular preferred 7-position substituents in quinolone antibacterial agents.

   8. Whether prior art 7-position substituents in quinolone molecules are structurally similar to the Bayer fused 5,5-bicyclic 7-position substituent (2,7-diazabicyclo[3.3.0]oct-7-yl) of the claimed compounds.

   9. Whether Reddy has proven by clear and convincing evidence that the relevant art as of July 15, 1988 taught the utility of Bayer's fused 5,5-bicyclic substituent in the 7-position of a quinolone molecule.

   10. What is the closest prior art to the quinolone antibacterial agents claimed in the '517 patent.

   11. Whether Reddy has proven by clear and convincing evidence that the art as a whole contained a suggestion, motivation, or teaching to modify compound AT-3295 or compound 1-130 of the Sankyo EP 0 241 206 application so as to result in the fused 5,5-bicyclic 7-position substituent as claimed in the '517 patent.

   12. Whether the prior art taught away from the invention claimed in the '517 patent.

13. Whether Reddy has proven by clear and convincing evidence that the person of ordinary skill in the art would have had a reasonable expectation of success in modifying AT-3295 or compound 1-130 of the Sankyo EP 0 241 206 application in order to practice the invention claimed in the '517 patent.

14. Whether the invention claimed in the '517 patent shows unexpected desirable properties.

15. Whether the invention claimed in the '517 patent is a commercial success.

16. Whether the invention claimed in the '517 patent satisfied a long-felt but unmet need.

17. Whether others in the art tried but failed to develop the invention claimed in the '517 patent prior to July 15, 1998.

18. Whether the invention claimed in the '517 patent has been licensed by Bayer to third-parties.

19. Whether there is a nexus between objective evidence of nonobviousness that will be presented at trial and the invention claimed in the '517 patent

## II. ENFORCEABILITY

### A. '517 Patent

1. Whether Reddy has proven by clear and convincing evidence that the '517 patent is unenforceable due to inequitable conduct.

2. Whether Reddy has proven by clear and convincing evidence that the references on which it relies for its inequitable conduct allegations were material.

3. Whether Reddy has proven by clear and convincing evidence that the references on which it relies for its inequitable conduct allegations were material to the claims as issued.

    4.    Whether Reddy has proven by clear and convincing evidence that any person with a duty of disclosure with respect to the '434 application withheld material prior art with the intent to deceive the PTO.

    5.    Whether the Sankyo EP 0 241 206 application, the abstract of Dainippon Japanese application JP 60 126284, the Dainippon Japanese application JP 60 126284, and the Egawa et al., *Pyridonecarboxylic Acids as Antibacterial Agents*, J. Med. Chem. 27, 1543-1548 (1984) article were disclosed to Examiner Dentz prior to issuance of the '517 patent.

    6.    Whether, prior to issuance of the '517 patent, Justus Liebigs Ann. der Chemie, Vol. 677 (1964), page 155, was submitted in a co-pending application that was part of the Le A 26 108 patent application family and was before Examiner Dentz.

    7.    Whether the closest prior art to the claims of the '517 patent was before Examiner Dentz during the prosecution of the '434 application.

    8.    Whether the references relied on by Reddy in its inequitable conduct allegations were cumulative of, or not as pertinent as, the art before Examiner Dentz during prosecution of the '434 application.

    9.    Whether Reddy has proven by clear and convincing evidence that the conduct of any individual with a duty of disclosure with respect to the '434 application is so culpable that the '517 patent should be unenforceable.

**B.**    **'942 Patent**

    1.    Whether Reddy has proven by clear and convincing evidence that the '942 patent is unenforceable by reason of infectious unenforceability.

    2.    Whether Reddy has proven by clear and convincing evidence that there is an immediate and necessary relationship between any alleged inequitable conduct during prosecution of the '517 patent and enforcement of the '942 patent.

4

### III.     DOUBLE PATENTING

1. Whether Reddy has proven by clear and convincing evidence that the asserted claims of the '942 patent are invalid for double patenting.

2. Whether Reddy has proven by clear and convincing evidence that the person of ordinary skill in the art as of July 15, 1988 would have been motivated to modify the compounds claimed in claims 4 and 5 of the '517 patent and, if so, whether such a person would have been motivated to modify the 8-position substituents.

3. Whether Reddy has proven by clear and convincing evidence that the person of ordinary skill in the art as of July 15, 1988 would have been motivated to replace the fluorine and chlorine 8-position substituents of the compounds claimed in claims 4 and 5 of the '517 patent with a methoxy substituent.

4. Whether a person of ordinary skill in the art would have had a reasonable expectation of success in modifying the compounds claimed in claim 4 or claim 5 of the '517 patent to practice the claims of the '942 patent.

5. Whether the invention claimed in the '942 patent shows unexpected desirable properties.

6. Whether objective indicia of non-obviousness demonstrate that the asserted claims of the '942 patent are not invalid for obviousness-type double patenting over claim 4 or claim 5 of the '517 patent.

7. Whether Bayer had reason to focus specifically on moxifloxacin before the application that matured into the '517 patent was filed or issued.

8. Whether the compounds claimed in the '942 patent are structurally similar to compounds 4 and 5 of the '517 patent.

**IV. REQUESTED RELIEF**

1. Whether a judgment should be entered providing that the effective date of any FDA approval for Reddy commercially to make, use, or sell moxifloxacin hydrochloride or any drug product containing moxifloxacin hydrochloride be not earlier than the latest of the expiration dates of the '517 patent and the '942 patent.

2. Whether Reddy should be enjoined from infringing or inducing the infringement of the '517 patent and the '942 patent.

3. Whether Bayer should be awarded costs.