**EXHIBIT 4**

**BAYER'S STATEMENT OF ISSUES OF LAW THAT REMAIN TO BE LITIGATED**

**I.     CLAIM CONSTRUCTION**

"[T]he construction of a patent, including terms of art within its claim, is exclusively within the province of the court." Markman v. Westview Instruments, Inc., 517 U.S. 370, 372 (1996). Unless otherwise specified, the Court should construe a claim term according to "the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." Phillips v. AWH Corp., 415 F.3d 1303, 1313 (Fed. Cir. 2005) (en banc).

**II.    CLEAR AND CONVINCING EVIDENCE**

Invalidity and unenforceability must be proven by clear and convincing evidence. Budde v. Harley-Davidson, Inc., 250 F.3d 1369, 1376 (Fed. Cir. 2001); Juicy Whip, Inc. v. Orange Bang, Inc., 292 F.3d 728, 744 (Fed. Cir. 2002); Symbol Techs., Inc. v. Opticon, Inc., 935 F.2d 1569, 1580 (Fed. Cir. 1991).

**III.   OBVIOUSNESS**

Every issued patent claim is presumed valid. 35 U.S.C. § 282. A challenger bears the burden of establishing the invalidity of each asserted claim. Id.; see also Am. Hoist & Derrick Co. v. Sowa & Sons, Inc., 725 F.2d 1350, 1358 (Fed. Cir. 1984).

Obviousness is a legal determination based on several underlying issues of fact: (1) the scope and content of the prior art; (2) the level of skill of a person of ordinary skill in the art; (3) the differences between the claimed invention and the teachings of the prior art; and (4) any objective indicia of non-obviousness. Graham v. John Deere Co., 383 U.S. 1, 14, 17-18 (1966); see also 35 U.S.C. § 103. "The consistent criterion for determination of obviousness is whether the prior art would have suggested to one of ordinary skill in the art that this process should be carried out and would have a reasonable likelihood of success, viewed in the light of

the prior art." In re Dow Chem. Co., 837 F.2d 469, 473 (Fed. Cir. 1988). In determining obviousness, the invention must be considered as a whole and the claims must be considered in their entirety. See Carl Schenck, A.G. v. Nortron Corp., 713 F.2d 782, 785 (Fed. Cir. 1983). "Most, if not all, inventions are combinations and mostly of old elements." In re Rouffet, 149 F.3d 1350, 1357 (Fed. Cir. 1998) (quotation marks omitted).

Obviousness is determined as of the time of the invention, from the viewpoint of a hypothetical person of ordinary skill in the art. In re Kotzab, 217 F.3d 1365, 1369 (Fed. Cir. 2000). A person of ordinary skill in the art is "presumed to be one who thinks along the line of conventional wisdom in the art and is not one who undertakes to innovate, whether by patient, and often expensive, systematic research or by extraordinary insights, it makes no difference which." Standard Oil Co. v. Am. Cyanamid Co., 774 F.2d 448, 454 (Fed. Cir. 1985) (citation omitted); see also Life Techs., Inc. v. Clontech Labs., Inc., 224 F.3d 1320, 1325 (Fed. Cir. 2000).

### A. Invalidity Allegations Based on Art that Was Considered by the Patent Office.

Proving invalidity "is especially difficult when the prior art was before the PTO examiner during prosecution of the application." Hewlett-Packard Co. v. Bausch & Lomb, Inc., 909 F.2d 1464, 1467 (Fed. Cir. 1990). Parties asserting invalidity have "the added burden of overcoming the deference that is due to a qualified government agency presumed to have properly done its job, which includes one or more examiners who are assumed to have some expertise in interpreting the references and to be familiar from their work with the level of skill in the art and whose duty it is to issue only valid patents." Am. Hoist, 725 F.2d at 1359.

### B. Motivation To Select the Prior Art References and Lead Compounds.

One cannot use "the inventor's disclosure as a blueprint for piecing together the prior art to defeat patentability – the essence of hindsight." Ecolochem, Inc. v. S. Cal. Edison

Co., 227 F.3d 1361, 1371-72 (Fed. Cir. 2000) (quotation marks omitted); see also Grain Processing Corp. v. Am. Maize-Prods. Co., 840 F.2d 902, 907 (Fed. Cir. 1988). Where a claimed invention is alleged to be an obvious combination of prior art references, "there must be some suggestion, motivation, or teaching in the prior art that would have led a person of ordinary skill in the art to select the references" for combination. Karsten Mfg. Corp. v. Cleveland Golf Co., 242 F.3d 1376, 1385 (Fed. Cir. 2001); see also Yamanouchi Pharm. Co. v. Danbury Pharmacal, Inc., 231 F.3d 1339, 1343 (Fed. Cir. 2000).

In the context of claims involving chemical compounds and methods of administering those compounds, the inquiry is whether the evidence "show[s] sufficient motivation for one of ordinary skill in the art at the time of invention to . . . select[] as a lead compound" the compound on which a challenger's case is premised. Yamanouchi, 231 F.3d at 1344; see also Eli Lilly & Co. v. Zenith Goldline Pharms., Inc., 364 F. Supp. 2d 820, 904 (S.D. Ind. 2005). Courts look to whether "other more active compounds . . . would have been the obvious choices" to use as lead compounds. Yamanouchi, 231 F.3d at 1345.

    **C.**    **Motivation To Combine Prior Art References.**

Obviousness based on a combination of references also requires the existence of a "suggestion, motivation, or teaching" for a person of ordinary skill to combine the references to produce the claimed invention. Karsten Mfg., 242 F.3d at 1385; see also In re Fulton, 391 F.3d 1195, 1200 (Fed. Cir. 2004)   The inquiry is whether a "skilled artisan, confronted with the same problems as the inventor and with no knowledge of the claimed invention, would select the elements from the cited prior art references for combination in the manner claimed." In re Rouffet, 149 F.3d at 1357; Teleflex, Inc. v. Ficosa N. Am. Corp., 299 F.3d 1313, 1334 (Fed. Cir. 2002) (citing In re Dembiczak, 175 F.3d 994, 999 (Fed. Cir. 1999), abrogated on other grounds, In re Gartside, 203 F.3d 1305 (Fed. Cir. 2000)).

3

"Although the suggestion to combine references may flow from the nature of the problem, the suggestion more often comes from the teachings of the pertinent references or from the ordinary knowledge of those skilled in the art that certain references are of special importance in a particular field." Akamai Techs., Inc. v. Cable & Wireless Internet Servs., Inc., 344 F.3d 1186, 1196 (Fed. Cir. 2003) (citations omitted). Motivation to combine cannot come simply from the fact that the asserted prior art is within the same field as the invention. See Winner Int'l Royalty Corp. v. Wang, 202 F.3d 1340, 1349 (Fed. Cir. 2000); Dembiczak, 175 F.3d at 999.

D. **References that Teach Away.**

All of the prior art, including that which "teaches away" from the claimed invention, must be considered in assessing the alleged obviousness of a claimed invention. In re Hedges, 783 F.2d 1038, 1041 (Fed. Cir. 1986); W.L. Gore & Assocs. v. Garlock, Inc., 721 F.2d 1540, 1552-53 (Fed. Cir. 1983); Tec Air, Inc. v. Denso Mfg. Mich., Inc., 192 F.3d 1353,1359-60 (Fed. Cir. 1999). "A reference may be said to teach away when a person of ordinary skill, upon reading the reference, would be discouraged from following the path set out in the reference, or would be led in a direction divergent from the path that was taken by the applicant . . . [or] if it suggests that the line of development flowing from the reference's disclosure is unlikely to be productive of the result sought by the applicant." In re Gurley, 27 F.3d 551, 553 (Fed. Cir. 1994).

E. **Reasonable Expectation of Success.**

Obviousness also requires that a skilled artisan would have had a reasonable expectation of success in practicing the invention. The prior art does not provide a "reasonable expectation of success" where it simply teaches a "general approach that seemed to be a promising field of experimentation, where the prior art gave only general guidance as to the

particular form of the claimed invention or how to achieve it." In re O'Farrell, 853 F.2d 894, 903-04 (Fed. Cir. 1988). In the context of chemical compounds useful as pharmaceutical agents, the requisite reasonable expectation of success is a reasonable expectation of "finding a compound that had high activity, few side effects, and lacked toxicity." Yamanouchi, 231 F.3d at 1345.

  **F.** **Obvious to Try.**

  Prior art that suggests to a person of skill in the art to "vary all parameters or try each of numerous possible choices until one possibly arrived at a successful result, where the prior art gave either no indication of which parameters were critical or no direction as to which of many possible choices is likely to be successful," does not meet the standards of § 103. In re O'Farrell, 853 F.2d at 903; see also Gillette Co. v. S.C. Johnson & Son, Inc., 919 F.2d 720, 725 (Fed. Cir. 1990). Prior art that suggests to a person of skill in the art "to explore a new technology or general approach that seemed to be a promising field of experimentation, where the prior art gave only general guidance as to the particular form of the claimed invention or how to achieve it" is also insufficient. In re O'Farrell, 853 F.2d at 903; see also In re Eli Lilly & Co., 902 F.2d 943, 945 (Fed. Cir. 1990).

  **G.** **Unexpected Desirable Properties.**

  "Unexpected results," i.e., a showing that the claimed invention exhibits some superior property or advantage that a person of ordinary skill in the relevant art would have found surprising or unexpected, can rebut a prima facie case of obviousness. In re Soni, 54 F.3d 746, 750 (Fed. Cir. 1995). "The basic principle behind this rule is straightforward – that which would have been surprising to a person of ordinary skill in a particular art would not have been obvious. The principle applies most often to the less predictable fields, such as chemistry, where minor changes in a product or process may yield substantially different results." Id. When

unexpected results are used as evidence of nonobviousness, the results must be shown to be unexpected compared with the closest prior art. In re De Blauwe, 736 F.2d 699, 705 (Fed. Cir. 1984).

Unexpected properties of "a broader claimed range can, in certain instances, be proven by a narrower range of data." In re Kollman, 595 F.2d 48, 56 (C.C.P.A. 1979). "Often, one having ordinary skill in the art may be able to ascertain a trend in the exemplified data which would allow him to reasonably extend the probative value thereof. The proof, thus considered, might then be sufficient to rebut a PTO holding of prima facie obviousness." Id.; see also E.I. Du Pont de Nemours & Co. v. Phillips Petrol. Co., 656 F. Supp. 1343, 1368 (D. Del. 1987) (in assessing unexpected properties, "any gap may be effectively covered by trends discernible by a worker skilled in the art from a large quantity of existing data" (emphasis in original)), vacated on other grounds, 849 F.2d 1430 (Fed. Cir. 1988).

  H. **Objective Indicia of Non-Obviousness.**

Objective indicia of non-obviousness must be considered in an obviousness determination. WMS Gaming, Inc. v. Int'l Game Tech., 184 F.3d 1339, 1359 (Fed. Cir. 1999); In re Johnston, 435 F.3d 1381, 1385 (Fed. Cir. 2006); Ashland Oil, Inc. v. Delta Resins & Refractories, Inc., 776 F.2d 281, 306 (Fed. Cir. 1985). Objective evidence of non-obviousness includes commercial success, long-felt but unmet need, failure of others, and licenses of the patented invention to third parties. See In re Rouffet, 149 F.3d at 1355.

IV. **ENFORCEABILITY**

  A. **Inequitable Conduct.**

To establish inequitable conduct on the basis of allegedly withheld prior art, the challenger must establish by clear and convincing evidence that the reference was material and that it was intentionally withheld or concealed from the U.S. Patent and Trademark Office

6

("PTO").  See Juicy Whip, Inc. v. Orange Bang, Inc., 292 F.3d 728, 744 (Fed. Cir. 2002).  "In a case involving an omission of a material reference to the PTO, there must be clear and convincing evidence that the applicant made a deliberate decision to withhold a known material reference."  Baxter Int'l v. McGaw, Inc., 149 F.3d 1321, 1329 (Fed. Cir. 1998).  Once materiality and intent have been established, the court must weigh those factors "in light of all of the circumstances to determine whether the applicant's conduct is so culpable that the patent should be unenforceable."  Juicy Whip, 292 F.3d at 744.  A low level of materiality requires a higher finding of intent, and vice-versa.  Purdue Pharma L.P. v. Endo Pharms. Inc., -- F.3d --, Nos. 04-1189, -1347, -1357, 2006 WL 231480, at *4, *10 (Fed. Cir. Feb. 1, 2006); see also Digital Control Inc. v. The Charles Machine Works, -- F.3d --, No. 05-1128, 2006 WL 288075, at *5-*6 (Fed. Cir. Feb. 8, 2006).

      **1.**    **Materiality.**

The Federal Circuit recently indicated that there are as many as five potential standards for materiality which may be applicable:

- the standard set forth in the current version of 37 C.F.R. § 1.56(b), which states that information is material if it (a) establishes, by itself or in combination with other information, a prima facie case of unpatentability, or (b) refutes, or is inconsistent with, a position the applicant takes in asserting an argument of patentability or opposing an argument of unpatentability;

- the objective "but for" standard, where the misrepresentation or omission was so material that the patent should not have issued;

- the subjective "but for" test, where the misrepresentation or omission actually caused the examiner to approve the patent application when he would not otherwise have done so;

- the "but it may have" standard, where the misrepresentation or omission may have influenced the patent examiner in the course of prosecution; and

- the "reasonable examiner" standard of the pre-1992 version of 37 C.F.R. § 1.56(b), where information is considered material if "there is a substantial likelihood that a reasonable examiner would consider [the information] important in deciding whether to allow the application to issue as a patent."

Digital Control, 2006 WL 288075, at *4-*6.

The standards set forth in the pre- and post-1992 versions of Section 1.56 are substantively similar. See Hoffmann-La Roche, Inc. v. Promega Corp., 323 F.3d 1354, 1368 n.2 (Fed. Cir. 2003); Purdue Pharma, 2006 WL 231480, at *5 n.6.

If a court relies on the "reasonable examiner" standard, it must find a quantitatively higher level of intent in order to hold a patent unenforceable than if another standard is used. Digital Control, 2006 WL 288075, at *5-*6.

a. Materiality to Patent Claims as Issued.

An allegedly withheld reference must have been material to a patent claim as issued in order to form the basis for a finding of inequitable conduct. Kimberly-Clark Corp. v. Johnson & Johnson, 745 F.2d 1437, 1457 (Fed. Cir. 1984) ("In a case such as this, involving an issued patent attacked for breach of the duty of candor only on the basis of nonfeasance consisting of a failure to disclose known prior art, the key issues of materiality and intent should be decided with reference to the claims of the patent. What we see here, however, is an attempt

8

by defendants to build a case of 'fraud' by reason of non-disclosure of prior art material only to abandoned claims long since cancelled during prosecution after being rejected by the examiner as unpatentable for reasons not involving the uncited prior art. To base a conclusion of 'fraud' on such grounds is to deal with a hypothetical situation, not with reality."). An allegedly withheld reference which was only material to application claims as originally filed, and not material to a patent's issued claims, cannot form the basis for a finding of inequitable conduct. See, e.g., id.; Baxter, 149 F.3d at 1331-32 ("In Fox [Indus., Inc. v. Structural Pres. Sys., Inc., 922 F.2d 801 (Fed. Cir. 1990)] and in Driscoll [v. Cebalo, 731 F.2d 878 (Fed. Cir. 1984)], the omitted references were not only material to the claims that were cancelled, but were also material to the issued claims." . . . "[T]he present action is unlike Fox and Driscoll, where the cancelled claims to which the omitted reference was relevant were intimately related to the issued claims."); Fox, 922 F.2d at 803 ("In [Kimberly-Clark] the non-disclosed prior art was not material to the allowed claims. Such is not the case here."); Scripps Clinic & Research Found. v. Genentech, Inc., 927 F.2d 1565, 1583 (Fed. Cir. 1991).

    b.  Prior Art that Is Less Material than, or Cumulative to, Art Already Before the Examiner.

An allegedly withheld prior art reference is not material if it "is not as pertinent as that considered by the examiner, or is merely cumulative to that considered by the examiner." Molins PLC v. Textron, Inc., 48 F.3d 1172, 1179 (Fed. Cir. 1995); see also Scripps, 927 F.2d at 1583; FMC Corp. v. Manitowoc Co., 835 F.2d 1411, 1415 (Fed. Cir. 1987).

  **2.**  **References Disclosed to the PTO.**

A reference which is disclosed to or otherwise before the PTO examiner cannot form the basis for a finding of inequitable conduct on the ground that it was withheld or concealed from the examiner. Molins, 48 F.3d at 1185 ("When a reference was before the

9

examiner, whether through the examiner's search or the applicant's disclosure, it cannot be deemed to have been withheld from the examiner." (quotation marks omitted)); see also, e.g., Fiskars, Inc. v. Hunt Mfg. Co., 221 F.3d 1318, 1327 (Fed. Cir. 2000) ("An applicant can not be guilty of inequitable conduct if the reference was cited to the examiner, whether or not it was a ground of rejection by the examiner."); Scripps, 927 F.2d at 1582 (reference that is before the examiner cannot be deemed to have been withheld).

A reference cannot be regarded as withheld or concealed for purposes of inequitable conduct if the reference was disclosed in a co-pending application before the same examiner. See Kimberly-Clark, 745 F.2d at 1456; FMC Corp. v. Hennessy Indus., Inc., 836 F.2d 521, 526 (Fed. Cir. 1987).

The PTO has the authority and responsibility to withdraw a patent from issue after issuance of the notice of allowance if it determines that one or more of the claims is unpatentable or that there was a violation of the duty of disclosure. BlackLight Power, Inc. v. Rogan, 295 F.3d 1269, 1270-73 (Fed. Cir. 2002); 35 U.S.C. § 151; 37 C.F.R. § 1.313.

### 3. Intent.

A party alleging inequitable conduct must demonstrate that a person with a duty of disclosure acted "with the specific intent to mislead" the PTO. Speedplay, Inc. v. Bebop, Inc., 211 F.3d 1245, 1259 (Fed. Cir. 2000). Where a case involves omission of a material reference, "there must be clear and convincing evidence that the applicant made a deliberate decision to withhold a known material reference." Baxter, 149 F.3d at 1329. "Wholly inadvertent errors or honest mistakes" do not satisfy the requisite level of intent. Litton Indus. Prods., Inc. v. Solid State Sys. Corp., 755 F.2d 158, 166 (Fed. Cir. 1985). Nor does "carelessness in the performance of a duty," Speedplay, 211 F.3d at 1259, or "gross negligence," Kingsdown Med. Consultants, Ltd. v. Hollister Inc., 863 F.2d 867, 876 (Fed. Cir. 1988) (en banc). Submission of a reference,

even after issuance of a notice of allowance, is inconsistent with a finding of intent to mislead. See Tap Pharm. Prods., Inc. v. Owl Pharms., L.L.C., 419 F.3d 1346, 1350, 1352 (Fed. Cir. 2005).

"When determining whether intent has been shown, a court must weigh all evidence, including evidence of good faith." Purdue Pharma, 2006 WL 231480, at *9.

### B. Infectious Unenforceability.

A necessary predicate for establishing infectious unenforceability is proof of inequitable conduct sufficient to hold a related patent unenforceable. Speedplay, 211 F.3d at 1259. For this doctrine to apply, there must be an "immediate and necessary relation" of the alleged inequitable conduct to "enforcement of each of the separate patents-in-suit." Consol. Aluminum Corp. v. Foseco Int'l Ltd., 910 F.2d 804, 810 (Fed. Cir. 1990) (quotation marks omitted). The inquiry is whether inequitable conduct committed during prosecution of one patent affected the prosecution of and, ultimately, the decision to issue, a related patent. See id. at 812; Hoffmann-La Roche, Inc. v. Promega Corp., 319 F. Supp. 2d 1011, 1022 (N.D. Cal. 2004).

## V. DOUBLE PATENTING

### A. Types of Double Patenting Recognized by Law.

The law recognizes two bases for invalidation of a claim for double patenting. Gen. Foods Corp. v. Studiengesellschaft Kohle mbH, 972 F.2d 1272 (Fed. Cir. 1992). The first, "statutory double patenting" (often called "same invention double patenting") provides that a later-issued patent cannot claim the identical subject matter claimed in an earlier-issued patent with the same assignee. In re Longi, 759 F.2d 887, 892-93 (Fed. Cir. 1985) ("Whoever invents or discovers any new and useful process . . . may obtain a patent therefor" (emphasis in original) (quoting 35 U.S.C. § 101)); In re Vogel, 422 F.2d 438, 441 (C.C.P.A. 1970).

The second basis for double patenting, often referred to generically as "non-statutory" double patenting, applies when "claims in a later patent . . . are not patentably distinct from claims in a commonly owned earlier patent." Eli Lilly & Co. v. Barr Labs., Inc., 251 F.3d 955, 967 (Fed. Cir. 2001); In re Longi, 759 F.2d at 892. In the double-patenting context, a "later patent claim is not patentably distinct from an earlier patent claim if the later claim is obvious over, or anticipated by, the earlier claim." Eli Lilly, 251 F.3d at 968.

## B. Non-Statutory Obviousness-Type Double Patenting.

Obviousness-type double patenting (as opposed to non-statutory double patenting based on anticipation by an earlier claim) is concerned with whether later-issued claims are rendered obvious by earlier-issued claims, which "is analogous to [a failure to meet] the non-obviousness requirement of 35 U.S.C. § 103, except that the patent principally underlying the double patenting rejection is not considered prior art." In re Longi, 759 F.2d at 892 n.4 (brackets in original & internal quotation marks omitted). Unlike an obviousness inquiry under § 103, obviousness-type double patenting "depends entirely on what is claimed in an [earlier-]issued patent." In re Bartfeld, 925 F.2d 1450, 1453 (Fed. Cir. 1991) (emphasis in original). The disclosure in the earlier specification is irrelevant to the inquiry. Vogel, 422 F.2d at 442.

The same underlying factual inquiries which are relevant to an obviousness determination under § 103 are relevant to the consideration of obviousness-type double patenting. See, e.g., Studiengesellschaft Kohle mbH v. N. Petrochem. Co., 784 F.2d 351, 355 (Fed. Cir. 1986) (party asserting double patenting "offered no evidence of the scope and content of the [prior] art . . . the level of skill in the art, or what would have been obvious to a person skilled in the art"). A motivation or suggestion to modify an earlier claim and a reasonable expectation of success are required to demonstrate that a later claim is an obvious variant of that

earlier-issued, commonly owned claim.  See Ortho Pharm. Corp. v. Smith, 959 F.2d 936, 943 (Fed. Cir. 1992); In re Longi, 759 F.2d at 896-97.

### 1. Consideration of the Properties of a Claimed Compound.

The properties of a claimed compound must be considered in determining whether it is an obvious variant of an earlier-claimed compound.  "From the standpoint of patent law, a compound and all of its properties are inseparable."  In re Papesch, 315 F.2d 381, 391 (C.C.P.A. 1963).  "[T]he patentability of [a compound] does not depend on the similarity of its formula to that of another compound but of the similarity of the former compound to the latter.  There is no basis in law for ignoring any property in making such a comparison."  Id.; see also, e.g., In re Lalu, 747 F.2d 703, 707 (Fed. Cir. 1984) ("a relevant property of a compound cannot be ignored in the determination of non-obviousness"); In re Chupp, 816 F.2d 643, 646 (Fed. Cir. 1987).

### 2. Geneva Pharmaceuticals, Inc. v. GlaxoSmithKline PLC.

Geneva Pharmaceuticals, Inc. v. GlaxoSmithKline PLC, 349 F.3d 1373 (Fed. Cir. 2003) was "a case involving nonstatutory double patenting based upon anticipation under § 102 rather than obviousness under § 103."  Zenith Goldline, 364 F. Supp. 2d at 911 (citing Geneva, 349 F.3d at 1384).  Footnote 1 of Geneva stated:

> The distinctions between obviousness under 35 U.S.C. § 103 and nonstatutory double patenting include:
>
> 1.   The objects of comparison are very different: Obviousness compares claimed subject matter to the prior art; nonstatutory double patenting compares claims in an earlier patent to claims in a later patent or application;
>
> 2.   Obviousness requires inquiry into a motivation to modify the prior art; nonstatutory double patenting does not;
>
> 3.   Obviousness requires inquiry into objective criteria suggesting non-obviousness; nonstatutory double patenting does not.

13

"This interpretation makes sense in view of the law of anticipation, which does not require evidence of motivation to modify and objective evidence of nonobviousness." Zenith Goldline, 364 F. Supp. 2d at 911; see also In re Paulsen, 30 F.3d 1475, 1482 n.11 (Fed. Cir. 1994) ("evidence of nonobviousness is irrelevant for patentability purposes when an invention is anticipated under [35 U.S.C.] § 102").

Decisions of the Federal Circuit and its predecessor have considered issues of motivation and unexpected properties in the context of non-statutory double patenting contentions based on obviousness. Ortho Pharm., 959 F.2d at 943 ("Given the structure and properties of the components claimed in [the two earlier-issued patents], there would have been no suggestion in the art (and, hence, it would not have been obvious) to modify those structures in order to achieve the compounds of [the patents-in-suit]."); In re Baird, 348 F.2d 974, 979 (C.C.P.A. 1965) ("This [double-patenting] problem may also be stated to be whether it would have been obvious to one of ordinary skill to modify the process of the patent claims by eliminating the irradiation step."); In re Emert, 124 F.3d 1458, 1462 (Fed. Cir. 1997) (looking for "some indication of unexpected properties" in assessing whether the claimed invention was invalid for non-statutory double patenting); Longi, 759 F.2d at 896 (looking to a declaration concerning unexpected results to assess non-statutory double patenting); In re Papesch, 315 F.2d at 391; In re Lalu, 747 F.2d at 707.

    **C.**    **In re Schneller.**

Other than (1) statutory same invention double patenting and (2) non-statutory double patenting based on anticipation or obviousness, "[n]o other kind of 'double patenting' is recognized." Gen. Foods, 972 F.2d at 1278. The "commonplace situation" of domination, in which an earlier-issued claim to a genus covers a later-issuing claim to a species within that genus, "is not, per se, double patenting." In re Kaplan, 789 F.2d 1574, 1577-78 (Fed. Cir. 1986).

14

In re Schneller, 397 F.2d 350 (C.C.P.A. 1968), affirmed a double-patenting rejection where the applicant sought to claim the single embodiment he invented in both earlier- and later-issued claims which varied only slightly from each other and were not of an "independent and distinct character." Id. at 354. The court held that the double-patenting doctrine served to preclude "unjustified" timewise extensions of the right to exclude. Id. Extensions are "unjustified" only if the claims of a later-issued patent are the same invention as or are anticipated or rendered obvious by the earlier-issued claim. See In re Braat, 937 F.2d 589, 594-95 (Fed. Cir. 1991); Eli Lilly, 251 F.3d at 968; Zenith Goldline, 364 F. Supp. 2d at 909-10.

A decision of the Court of Customs and Patent Appeals which was not joined by a majority of the five judges is not controlling precedent. See In re Kaplan, 789 F.2d at 1578. The PTO has held that Schneller "is of doubtful controlling precedent" for this reason. Ex parte Davis, 56 U.S.P.Q.2d 1434, 1438 n.5 (Bd. Pat. Interferences 2000). "Schneller did not establish a rule of general application and thus is limited to the particular set of facts set forth in that decision." Id. at 1436; see also M.P.E.P. § 804(II)(B)(2) (8th ed., 4th rev. 2005).

## VI.  RELIEF REQUESTED

If a court determines that a patent has been infringed by a proposed ANDA product, "the court shall order the effective date of any approval of the drug . . . involved in the infringement to be a date which is not earlier than the date of the expiration of the patent which has been infringed." 35 U.S.C. § 271(e)(4)(A); see also 21 U.S.C. § 355(j)(5)(B)(iii). In addition, "injunctive relief may be granted against an infringer to prevent the commercial manufacture, use, offer to sell, or sale within the United States or imported into the United States" of the infringing product. 35 U.S.C. § 271(e)(4)(B); see also Richardson v. Suzuki Motor Co., 868 F.2d 1226, 1247 (Fed. Cir. 1989) ("It is the general rule that an injunction will issue when infringement has been adjudged, absent a sound reason for denying it.").

"[C]osts other than attorneys' fees shall be allowed as of course to the prevailing party unless the court otherwise directs." Fed. R. Civ. P. 54(d)(1); <u>see</u> <u>also</u> D. Del. L.R. 54(a)(1).