## REDDY'S STATEMENT OF ISSUES OF LAW

<u>ISSUES ON WHICH REDDY BEARS THE BURDEN OF PROOF</u>

Reddy submits this Statement of Issues of Law that remain to be litigated without waiving prior positions taken by Reddy. Reddy reserves the right to litigate legal issues raised by Bayer or Reddy even if not specifically set forth herein. To the extent that any issues of fact set forth in Reddy's Statement of Facts that remain to be litigated may be considered as issues of law, Reddy hereby incorporates those issues by reference. Reddy also incorporates by reference any portion of Reddy's Brief Statement of Intended Proofs that raises additional legal issues.

### I.     UNENFORCEABILITY

#### A. Inequitable Conduct

##### 1.     Whether U.S. Patent No. 4,990,517 is Unenforceable Due to Inequitable Conduct

An applicant for a U.S. patent has a duty of candor to the United States Patent and Trademark Office ("PTO") during prosecution of a patent application. *Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1178 (Fed. Cir. 1995); 37 C.F.R. § 1.56; *Tenneco Auto. Operating Co. v. Visteon Corp.*, 375 F. Supp. 2d 366, 372 (D. Del. 2005). Given the *ex parte* nature of patent prosecution, the highest standards of honesty and candor on the part of applicants are essential to a working patent system. *Norton v. Curtiss*, 433 F.2d 779, 794 (C.C.P.A. 1970). This requirement is embodied in 37 C.F.R. § 1.56, which states that "[e]ach individual associated with the filing and prosecution of a patent application has a duty of candor and good faith in dealing with the Office, which includes a duty to disclose to the Office all information known to that individual to be material to patentability as defined in this section."

1

Inequitable conduct occurs when a patent applicant breaches this duty of disclosure. *Novo Nordisk Pharm., Inc. v. Bio-Technology Gen. Corp.*, 424 F.3d 1347, 1359 (Fed. Cir. 2005). This duty extends to both applicants and their attorneys. *FMC Corp. v. Manitowoc Co., Inc.*, 835 F.2d 1411, 1415 n.8 (Fed. Cir. 1987) ("'Applicant' as used here includes the patentee and the attorney who prosecuted the application that resulted in the patent-in-suit, because the knowledge and actions of applicant's attorney are chargeable to applicant.").

Inequitable conduct is a broader, more inclusive concept than common law fraud. *Nobelpharma AB v. Implant Innovations, Inc.*, 141 F.3d 1059, 1069 (Fed. Cir. 1998). "Inequitable conduct includes affirmative misrepresentation of a material fact, failure to disclose material information, or submission of false material information, coupled with an intent to deceive." *Novo Nordisk Pharm., Inc.* 424 F.3d at 1359. A withheld reference may be highly material when it discloses a more complete combination of relevant features, even if those features are before the patent examiner in other references. *Molins*, 48 F.3d at 1180.

If a defendant can establish that a patent applicant engaged in inequitable conduct as to one or more claims during the prosecution of an asserted patent, then the entire patent is rendered unenforceable. *See, Kingsdown Med. Consultants v. Hollister Inc.*, 863 F.2d 867, 877 (Fed. Cir. 1988); *Tenneco Auto. Operating Co.*, 375 F. Supp. at 372. *LaBounty Mfg., Inc. v. United States Int'l Trade Comm'n*, 958 F.2d 1066, 1070 (Fed.Cir.1992) ("Thus, if an applicant withholds material information from the PTO with intent to affect the allowance of claims, the applicant may be found guilty of inequitable conduct and the patent obtained would be rendered unenforceable.").

2

Inequitable conduct is assessed through a two-step analysis. First, the court determines materiality. For patent applications that have been prosecuted prior to 1992, "(i)nformation is deemed material if there is a substantial likelihood that a reasonable examiner would have considered the information important in deciding whether to allow the application to issue as a patent." *Li Second Family L.P. v. Toshiba Corp.*, 231 F.3d 1373, 1379 (Fed. Cir. 2000) (quoting 37 C.F.R. § 1.56 (1989)); *Syntex (U.S.A.) LLC v. Apotex, Inc.*, 407 F.3d 1371, 1384 (Fed. Cir. 2005). The Federal Circuit recently reaffirmed the vitality and continuing applicability of the "reasonable examiner" standard, holding that the "arguably narrower" standard of materiality in the PTO's new Rule 56 standard was not intended to, and did not replace or supplant the "reasonable examiner standard." *Digital Control Inc. v. The Charles Machine Works*, slip op at pp.11-12, Case No. 05-1128 (Fed. Cir. Feb. 8, 2006).

Second, the court determines whether there is direct evidence or circumstantial evidence, based on the conduct, that the patentee had the intent to deceive the PTO. *FMC Corp.*, 835 F.2d at 1415-16. The party asserting inequitable conduct does not need to establish either "but for" causation or actual reliance. *Merck & Co. v. Danbury Pharmacal, Inc.*, 873 F.2d 1418, 1421 (Fed. Cir. 1989).

"Close cases should be resolved by disclosure, not unilaterally by the applicant." *LaBounty Mfg., Inc.*, 958 F.2d at 1076; *see Brasseler, U.S.A. I, L.P. v. Stryker Sales Corp.*, 267 F.3d 1370, 1383 (Fed. Cir 2001) (notice of possibly material information arises "when information of which the attorney is aware suggests the existence of specific information that may be material"). "Materiality is not limited to prior art but instead embraces *any* information that a reasonable examiner would be substantially likely to

3

consider important in deciding whether to allow an application to issue as a patent." *GFI,*
*Inc. v. Franklin Corp.*, 265 F.3d 1268, 1274 (Fed. Cir. 2001), *cert. denied,* 537 U.S. 1046
(2002); *see also* 35 U.S.C. § 1.106(c)(1990) ("In rejecting claims the examiner may rely
upon admissions by the applicant, or the patent owner in a reexamination proceeding, as
to any matter affecting patentability."); *Constant v. Advanced Micro-Devices, Inc.*, 848
F.2d 1560, 1560 (Fed. Cir. 1988) (admission during prosecution was "strong evidence" of
obviousness).

Information can be material even if it is not outcome determinative, and even if it
was not, or would not have been, cited or specifically relied upon by the patent examiner
in making the ultimate decision on whether to issue the patent. *See Pharmacia Corp. v.
Par Pharm., Inc.,* 417 F.3d 1369, 1373 (Fed. Cir. 2005). "To be material, a
misrepresentation need not be relied on by the examiner in deciding to allow the patent.
The matter misrepresented need only be within a reasonable examiner's realm of
consideration." *Merck & Co., Inc.*, 873 F.2d at 1421. *See Molins PLC,* 48 F.3d at 1180
(the fact that the Examiner did not rely on a reference to reject claims in a reexamination
over a reference withheld during the initial examination did not mean that the reference
was not material or that it was not inequitable conduct to withhold it before the patent
issued).

Once materiality is shown, the Court must then decide whether the applicant acted
with the requisite level of intent to mislead the PTO. *See Baxter Int'l, Inc. v. McGaw,
Inc.*, 149 F.3d 1321, 1327 (Fed. Cir. 1998). Intent need not, and rarely can, be proven by
direct evidence. *Merck & Co., Inc.,* 873 F.2d at 1422; *Molins PLC,* 48 F.3d at 1180. "It
is most often proven by a showing of acts, the natural consequences of which are

4

presumably intended by the actor." *Molins PLC*, 48 F.3d at 1180. The requisite intent "may be found as a matter of inference from circumstantial evidence." *Id.* at 1181.

The Federal Circuit Court of Appeals has "repeatedly said that direct evidence of intent is unavailable in most cases and unnecessary in any event." *Frazier v. Roessel Cine Photo Tech, Inc.*, 417 F.3d 1230, 1235 (Fed. Cir. 2005). "Generally, intent must be inferred from the facts and circumstances surrounding the applicant's conduct." *Id.* at 1180-81; *see also Rohm & Haas Co. v. Crystal Chem. Co.*, 722 F.2d 1556, 1571 (Fed. Cir. 1983) ("[P]roof of the actual state of mind of the applicant or persons associated with or representing an applicant is not required.").

"'[S]moking gun' evidence is not required in order to establish anintent to deceive." *Paragon Podiatry Lab, Inc. v. KLM Labs., Inc.*, 984 F.2d 1182, 1189 (Fed. Cir. 1993). An inference of intent is warranted where a patent applicant knew or should have know that the withheld information would be material to the PTO's consideration of the patent application. *Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.*, 120 F.3d 1253, 1256 (Fed. Cir. 1997). *See also, Novo Nordisk Pharmaceuticals, Inc.*, 424 F.3d at 1362 (inventors and their attorneys cannot escape a finding of inequitable conduct by relying on the "circular logic" of pointing fingers at each other); *Bruno Independent Living Aids, Inc. v. Acorn Mobility Servs. Ltd.*, 394 F.3d 1348, 1352 (Fed.Cir.2005) ("applicant who knew of the art or information cannot intentionally avoid learning of its materiality"); *Semiconductor Energy Laboratory, Co., Ltd. v. Samsung Electronics Co.*, 24 F. Supp.2d 537 (E.D.Va.,1998), affirmed, 204 F.3d 1368, 1376 (Fed. Cir. 2000) (applicants cannot hide behind the Code of Federal Regulations and the MPEP to argue that what was done with a misleading purpose should be disregarded).

Further, the Federal Circuit has made clear that courts can infer deceptive intent based on a finding that persons subject to the duty of candor "knew or should have known" of the materiality of the information withheld from, or misrepresented to, the PTO. *See, e.g., Novo Nordisk*, 424 F.3d at 1362, *citing Molins*, 48 F.3d at 1178. "[A] patentee facing a high level of materiality and clear proof that it knew or should have known of that materiality, can expect to find it difficult to establish 'subjective good faith' sufficient to prevent the drawing of an inference of intent to mislead." *Critikon, Inc.*, 120 F.3d at 1257.

At the time Bayer prosecuted the '517 patent application, the Manual of Patent Examining Procedure explicitly put patent practitioners on notice that prior art submitted after a notice of allowance would ordinarily not be considered unless certain procedures were followed. In particular, to ensure that information submitted after a Notice of Allowance would be considered, it was necessary for the late-cited information to be accompanied by:

> a. a proposed amendment canceling or further limiting at least one independent claim and narrowing the scope of the protection sought;
>
> b. a timely affidavit under 37 C.F.R. 1.131 with respect to the material cited; or
>
> c. a statement by the applicant or his attorney or agent that, in the judgment of the person making the statement, the information cited
>
>> (1) raises a serious question as to the patentability of the claimed subject matter, or
>>
>> (2) is closer than that of record, or
>>
>> (3) is material to the examination of the application as defined in 37 C.F.R.

> 1.56 (a) and is filed with an explanation as to why it was not earlier presented, e.g. information recently cited in a corresponding foreign application.

MPEP § 609, 5th Edition and 8th Revision (1988).

After the issue fee was paid, the procedures outlined in the MPEP were even stricter. Specifically, in addition to meeting the requirements for information submitted after the Notice of Allowance, information submitted after the Issue Fee was paid had to be accompanied by a petition, the appropriate fee, and a showing of good and sufficient reasons why the material was not cited earlier. *See* MPEP Chapter 600, 5th Edition and 8th Revision (1988), and MPEP Chapter 2000, 5th Edition and 3rd Revision (1986); *Ortho Diagnostic Systems, Inc. v. Miles Inc.*, 865 F. Supp. 1073, 1082 (S.D.N.Y 1994) (finding that any experienced patent attorney knew or should have known that failure to follow the MPEP procedures for post-allowance submission of prior art would likely cause the art not to be considered before the patent issued).

Once materiality and intent to deceive have been established, the court must weigh them to determine whether the balance tips in favor of a conclusion of inequitable conduct. *N.V. Akzo v. E.I. Dupont de Nemours*, 810 F.2d 1148, 1153 (Fed. Cir. 1987); *Novo Nordisk Pharm., Inc.*, 424 F.3d at 1359. The Federal Circuit has stated that "when balanced against high materiality, the showing of intent can be proportionally less." *Bristol-Myers Squibb Co. v. Rhone-Poulenc Rorer, Inc.*, 326 F.3d 1226, 1234 (Fed. Cir. 2003); *see also Tenneco Auto. Operating Co.*, 375 F. Supp. 2d at 373. Proof of high materiality and that the applicant knew or should have known of that materiality makes it difficult to show good faith to overcome an inference of intent to mislead. *See Critikon, Inc.*, 120 F.3d at 1257. "The more material the omission or the misrepresentation, the

7

lower the level of intent required to establish inequitable conduct, and vice versa." *Id.* at

1256; *N.V. Akzo*, 810 F.2d at 1153.

A trial court may also look beyond the final claims to their antecedents in

determining inequitable conduct. *Fox Indus., Inc. v. Structural Pres. Sys., Inc.*, 922 F.2d

801, 803 (Fed. Cir. 1990). "Claims are not born, and do not live, in isolation. Each is

related to other claims, to the specification and drawings . . . [and] to earlier or later

versions of itself in light of amendments made to it." *Id.* at 803-04; *Kingsdown*, 863 F.2d

at 874.

### B. Whether the April 25, 1995 Certificate of Correction to U.S. Patent No. 4,990, 517 is Invalid

A certificate of correction granted under 35 U.S.C. § 254 is only allowed if an

error by the patent office is clearly disclosed by the records of the United States Patent

and Trademark Office. 35 U.S.C. § 254, entitled "Certificate of correction of Patent and

Trademark Office mistake" provides:

> Whenever a mistake in a patent, incurred through the fault of the
> Patent and Trademark Office, is clearly disclosed by the records of
> the Office, the Director may issue a certificate of correction stating
> the fact and nature of such mistake, under seal, without charge, to
> be recorded in the records of patents. A printed copy thereof shall
> be attached to each printed copy of the patent, and such certificate
> shall be considered as part of the original patent. Every such
> patent, together with such certificate, shall have the same effect
> and operation in law on the trial of actions for causes thereafter
> arising as if the same had been originally issued in such corrected
> form. The Director may issue a corrected patent without charge in
> lieu of and with like effect as a certificate of correction.
> 35 U.S.C. § 254.

The Certificate of Correction dated April 25, 1995 in the '517 patent is invalid

because it was issued in violation of this statute. In order for a certificate of correction to

issue, error must be clearly evident from the prosecution history. *Superior Fireplace Co.*

8

*v. Majestic Products Co.*, 270 F.3d 1358, 1373 (Fed. Cir. 2002) (even 35 U.S.C. § 255, which does not contain the words "clearly disclosed," requires error to be "clearly evident" from prosecution history). "An error in the prosecution record must be viewed as are errors in documents in general;  that is, would it have been *apparent* to the interested reader that an error was made, such that it would be unfair to enforce the error" (emphasis added). *Id.* at 1372 (citing *Biotec Biologische Naturverpackungen GmbH & Co. KG v. Biocorp, Inc.*, 249 F.3d 1341, 1348 (Fed.Cir.2001)).

**C. Infectious Unenforceability – U.S. Patent No. 5,607,942**

**Whether the Inequitable Conduct in U.S. Patent No.  4,990, 517 Patent Carries Forward to U.S. Patent No. 5,607,942**

If an original patent is found unenforceable for inequitable conduct, descendant patents, which are genealogically related to the original patent, such as continuations, continuations-in-part, or divisionals, may also be rendered unenforceable. *See East Chicago Mach. Tool Corp. v. Stone Container Corp.*, 181 U.S.P.Q. 744, 748 (N.D. Ill. 1974); *Semiconductor Energy Laboratory, Co., Ltd.*, 24 F. Supp.2d 537.

This theory of unenforceability has been termed "infectious unenforceability" by district courts and recognized by the Federal Circuit. *See Baxter Int'l, Inc.*, 149 F.3d at 1327.  It is premised on the guiding principle that "the duty of candor extends through the patent's entire prosecution history," and that a breach of the duty of candor "may render unenforceable all claims which eventually issue from the same or a related application." *Arthrocare Corp. v. Smith & Nephew, Inc.*, 310 F. Supp.2d 638, 675 (D. Del. 2004) (citing *Fox Indus.*, 922 F.2d at 803-04) ("[A] breach of the duty of candor early in the prosecution may render unenforceable all claims which eventually issue from the same or a related application.").

To prove infectious unenforceability, a patent challenger must establish inequitable conduct sufficient to hold at least one patent unenforceable. *Speedplay, Inc. v. Bebop, Inc.*, 211 F.3d 1245, 1259 (Fed. Cir. 2000). If this threshold requirement is met, then the patent challenger is then in the position to demonstrate an "immediate and necessary relation" between the alleged inequitable conduct and enforcement of the related patents. *Arthrocare Corp*, 310 F. Supp.2d at 675; *Keystone Driller Co. v. Gen. Excavator Co.*, 290 U.S. 240, 247 (1933) (the relationship between the subject matter covered by two patents can cause the inequitable conduct in one of the patents to render the other patent unenforceable); *see Truth Hardware Corp. v. Ashland Prods., Inc.*, 2003 WL 22005839 (D. Del.) ("It is well-settled that a patentee's inequitable conduct renders unenforceable all patent claims having 'an immediate and necessary relation" to that conduct, regardless of whether the claims are contained in a single patent or a series of related patents.'") (quoting *Keystone Driller Co.*, 290 U.S. at 245-246).

[A] patent that issues from a divisional or continuation application may be held unenforceable where (i) there is inequitable conduct with respect to the prosecution of an earlier related application in the chain leading to the challenged patent and (ii) the inequitable conduct relates to the asserted claims of that [divisional or continuation] patent. *Truth Hardware Corp.*, 2003 WL 22005839 at *3. "Were this not the rule, a party committing inequitable conduct could avoid the consequences of that conduct through a scheme of divisional and continuation applications. The law does not countenance such a manipulation of the patent process." *Id. See also Semi-Conductor Energy*, 24 F. Supp.2d 543-44; *Bristol-Meyers Squibb Co. v. Ben Venue Labs.*, 90 F. Supp.2d 522, 537-38 (D.N.J. 2000).

## II.    INVALIDITY

### A. Obviousness

#### 1.    Whether the Asserted Claims of U.S. Patent No. 4,990,517 Are Invalid For Obviousness Under 35 U.S.C. § 103

35 U.S.C. § 103 provides, *inter alia*, that a patent may not be obtained if the differences between the subject matter sought to be patented and the prior art would have been obvious to a person having ordinary skill in the art. *Graham v. John Deere Co.*, 383 U.S. 1 (1966). Whether a claimed invention is unpatentable as obvious under 35 U.S.C. § 103 is a question of law based on underlying findings of fact. *McNeil-PPC, Inc. v. Perrigo Co.*, 337 F.3d 1362, 1368 (Fed. Cir. 2003). The underlying factual inquiries are 1) the level of ordinary skill in the pertinent art, 2) the scope and content of the prior art, 3) the differences between the claimed invention and the prior art, and 4) secondary considerations, if any, of nonobviousness. *Graham*, 383 U.S. at 17-18; *McNeil-PPC*, 337 F.3d at 1368.

35 U.S.C. § 103 requires that a claim be declared invalid when the invention set forth in that claim can be said to have been obvious to one of ordinary skill in the art. Obviousness is thus determined from the vantage point of a hypothetical person having ordinary skill in the art to which the patent pertains. *See*, *In re GPAC Inc.*, 57 F.3d 1573, 1579 (Fed. Cir. 1995). This hypothetical person of ordinary skill in the art is presumed to know all the teachings of the prior art references in the field of invention at the time the invention was made. *Union Carbide Corp. v. Am. Can Co.*, 724 F.2d 1567, 1576 (Fed. Cir. 1984); *In re Carlson*, 983 F.2d 1032, 1038 (Fed. Cir. 1993).

To determine the level of ordinary skill in the art, a court should consider factors such as the educational level of the inventor and of those in the relevant industry, and the

11

sophistication of the technology involved. *Ryko Mfg. Co. v. Nu-Star, Inc.,* 950 F.2d 714, 718 (Fed. Cir. 1991).

The scope of pertinent, or analogous prior art is defined as (1) that which is from the same field of endeavor, regardless of the problem addressed, or (2) if not within the same field of endeavor, that which is reasonably pertinent to the particular problem to be solved. *Shatterproof Glass Corp. v. Libbey-Owens Ford Co.,* 758 F.2d 613, 620 (Fed. Cir. 1985).

A conclusion of obviousness may be made based on a combination of references if the references, taken as a whole, would have suggested (expressly or by implication) the claimed invention to one of ordinary skill in the art. *See In re Merck & Co., Inc.,* 800 F.2d 1091, 1097 (Fed. Cir. 1986). Such a suggestion may come from (1) the references themselves; (2) knowledge of those skilled in the art; or (3) from the nature of the problem to be solved. *Brown & Williamson Tobacco Corp. v. Philip Morris Inc.,* 229 F.3d 1120, 1125 (Fed. Cir. 2000); *In re Beattie,* 974 F.2d 1309, 1312 (Fed. Cir. 1992) (Motivation or suggestion to combine the references can be provided by the prior art taken as a whole). The ultimate determination of obviousness "does not require absolute predictability of success. ... [A]ll that is required is a reasonable expectation of success." *Brown & Williamson Tobacco Corp.,* 229 F.3d at 1125; *In re O'Farrell,* 853 F.2d 894, 903-904 (Fed. Cir. 1988).

Secondary considerations such as commercial success, long felt but unresolved need and failure of others are relevant indicia of obviousness or nonobviousness. *Graham,* 383 U.S. at 18. To be probative on the issue of obviousness, there must exist a nexus between such evidence and the merits of the claimed invention. *Cable Elec. Prods.*

12

*Inc. v. Genmark, Inc.*, 770 F.2d 1015, 1027 (Fed. Cir. 1985). A nexus is required between the merits of the claimed invention and the objective evidence in order for evidence to be given substantial weight in the obviousness determination. *See Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530, 1539 (Fed. Cir. 1983). No nexus exists where the objective indicia such as commercial success is instead due to other factors extraneous to the patented invention, such as advertising. *J.T. Eaton & Co. v. Atlantic Paste & Glue Co.*, 106 F.3d 1563, 1571 (Fed. Cir. 1997). For evidence of commercial success to be relevant, the patentee must demonstrate that there is a nexus between the merits of the claimed invention and evidence of commercial success "to prove that the commercial success is not ascribable to other irrelevant commercial and economic factors." *Ryko Mfg. Co.*, 950 F.2d at 719.

Secondary considerations do not control the obviousness determination. *Ashland Oil, Inc. v. Delta Resins & Refractories, Inc.*, 776 F.2d 281, 306 (Fed. Cir. 1985); *see also Richardson-Vicks Inc. v. Upjohn Co.*, 122 F.3d 1476, 1483-84 (Fed. Cir. 1997). Even where the required nexus is established, the evidence of secondary considerations must be of sufficient weight to override a determination of obviousness based on primary considerations. *Ryko Mfg. Co.*, 950 F.2d at 719.

Objective evidence offered to rebut obviousness must be commensurate with the scope of the claims. *See In re Peterson*, 315 F.3d 1325, 1330-31 (Fed. Cir. 2003). In the context of genus claims, "[e]stablishing that one (or a small number of) species gives unexpected results is inadequate proof" of non-obviousness. *See In re Greenfield*, 571 F.2d 1185, 1189 (C.C.P.A. 1978). When one species of a genus is obvious, the entire genus is obvious. *In re Lintner*, 458 F.2d 1013, 1015 (C.C.P.A. 1972)("Claims which are

broad enough to read on obvious subject matter are unpatentable even though they also read on nonobvious subject matter.").

### B. Double Patenting

#### 1. Whether the Asserted Claims of U.S. Patent No. 5,607,942 Are Invalid For Obviousness-type Double Patenting

Through a statutorily-prescribed term, the patent laws limit the duration of a patentee's right to exclude others from practicing a claimed invention. 35 U.S.C. § 154(a)(2) (1994). Obviousness-type double patenting prevents extension of patent protection for an invention beyond the statutory term by the claiming of a slight variant. *General Foods Corp. v. Studiengesellschaft Kohle GmbH*, 972 F.2d 1272, 1277-78 (Fed. Cir. 1992). This judicially-created doctrine prevents parties from in effect extending their patent exclusion rights by filing a later patent with claims that cannot be considered patentably distinct from claims previously asserted in a commonly-owned earlier patent. *Eli Lilly & Co. v. Barr Labs., Inc.*, 251 F.3d 955, 967-68 (Fed. Cir. 2001); *In re Longi*, 759 F.2d 887, 892 (Fed. Cir. 1985); *Geneva Pharms., et al. v. GlaxoSmithKline PLC*, 349 F.3d 1372, 1377-1378 (Fed. Cir. 2003).

In *Lilly*, the court stated that "[t]he fundamental reason for the rule [of obviousness-type double patenting] is to prevent unjustified timewise extension of the right to exclude granted by a patent no matter how the extension is brought about." 251 F.3d at 968 (citing *In re Van Ornum*, 686 F.2d 937, 943-44 (CCPA 1982)).

An obviousness-type double patenting determination involves a two-step analysis to determine whether a patent is invalid for nonstatutory double patenting. First, the court must construe the claims in the earlier patent and the claims in the later patent and determine the differences between the claims. *Id.* at 968; *Georgia Pac. Corp. v. United*

*States Gypsum Co.*, 195 F.3d 1322, 1326 (Fed. Cir. 1999). Second, the court must determine whether the differences in subject matter between the earlier and later claims render the claims patentably distinct. *Eli Lilly & Co.*, 251 F.3d at 968. "A later claim that is not patentably distinct from an earlier claim in a commonly owned patent is invalid for obvious-type double patenting. A later patent claim is not patentably distinct from an earlier patent claim if the later claim is obvious over, or anticipated by, the earlier claim." *Id.* In order to receive patent protection the newly claimed invention must be novel and distinct from all previously claimed patented inventions the holder owns. *Geneva Pharms, Inc. v. Glaxosmithkline PLC*, 189 F. Supp. 2d 377, 384 (E.D. Va. 2002).

Public policy considerations weigh against allowing a patent holder to extend his patent protection monopoly by obtaining successive patents for the same claimed invention. *In re Longi*, 759 F.2d at 892. This prohibition against patent extension permits the public to rely on a certain date when the claimed invention, and obvious variants thereof, will be available for public use. The Federal Circuit has stated the underlying policy rationale for the doctrine of nonstatutory double patenting:

> When a patent issues, and there is no requirement of restriction of record to show that there are other applications still pending on related subject matter, the public should be able, upon seeing the issued patent, to act on the assumption that the patentee's protection is limited to what he claims and that what is not claimed, in the way of obvious modifications, alternatives, and the like, will be free of protection through any later patents issued to the patentee. The public should also be able to act on the assumption that upon expiration of the patent it will be free to use not only the invention claimed in the patent but also any modifications or variants thereof which would have been obvious to those of ordinary skill in the art at the time the invention was made, taking into account the skill of the art and prior art other than the invention claimed in the issued patent.

*In re Zickendraht* , 319 F.2d 225, 231-32 (C.C.P.A. 1963) (Rich J., concurring).

Thus, the public policy underlying the double patenting doctrine is "to allow the public to freely use a patent upon its expiration." *In re Metoprolol Succinate Patent Litig.*, MDL No. 1620, 2006 WL 120343, at *3 (E.D. Mo. Jan. 17, 2006) (granting defendants' cross-motion for summary judgment of obviousness-type double patenting).

The Court of Appeals for the Federal Circuit recently explained that the analysis for nonstatutory double patenting differs from an obviousness analysis under 35 U.S.C. § 103. *Geneva Pharms.*, 349 F.3d at 1378.   In *Geneva Pharmaceuticals*, the Court explained the reasons why a determination of nonstatutory double patenting is not subsumed by the obviousness analysis under § 103:

1. The objects of comparison are very different:  Obviousness compares claimed subject matter to the prior art; nonstatutory double patenting compares claims in an earlier patent to claims in a later patent or application;

2. Obviousness requires inquiry into a motivation to modify the prior art; nonstatutory double patenting does not;

3. Obviousness requires inquiry into objective criteria suggesting non-obviousness; nonstatutory double patenting does not.

*Geneva Pharms.*, 349 F.3d at 1377 n.1.

The *Geneva* Footnote did not announce a new rule of law.  In a detailed analysis of obviousness-type double patenting, prior to *Geneva*, the Federal Circuit has excluded any discussion of secondary considerations. *See Eli Lilly & Co.,* 251 F.3d at 967-72.

Moreover at least three district courts have followed this Federal Circuit authority fully and without question. *See Pfizer, Inc. v. Ranbaxy Labs. Ltd.*, No. CIV.A. 03-209-JJF, 2005 U.S. Dist. LEXIS 33393, at *41 (D. Del. Dec. 16, 2005) ("Unlike the obviousness inquiry under 35 U.S.C. § 103, non-statutory double patenting does not require an inquiry into the objective criteria of non-obviousness") (citing the *Geneva*

16

Footnote); *Applera Corp. v. MJ Research Inc.*, 363 F. Supp. 2d 261, 264 (D. Conn. 2005) ("While [the double patenting] inquiry is analogous to the obviousness inquiry under 35 U.S.C. § 103, it is distinct in that 'the objects of comparison are very different' . . . In addition, the double patenting inquiry does not include an examination of the motivation to modify the prior art, nor does it involve inquiry into objective criteria suggesting nonobviousness") (citing the *Geneva* Footnote); *Pfizer, Inc. v. Mylan Labs., Inc.*, No. 02:02CV1628, 2005 WL 2874997, at *3 (W.D. Pa. Nov. 2, 2005) ("In assessing obviousness[-type double patenting], only the claims are to be compared, and the Court neither examines motivation to combine prior art references nor objective standards of non-obviousness as with obviousness inquiries under 35 U.S.C. § 103.").

### 2.    Whether the Issued Claims of U.S. Patent No. 5,607,942 Are Invalid for Nonobviousness-type Double Patenting

Reddy will prove that Bayer's '942 patent is invalid for nonobviousness-type double patenting over Bayer's '517 patent. Nonobviousness-type double patenting is based on the holding in *In re Schneller*, 397 F.2d 350, 353-55 (CCPA 1968). In *Schneller*, it was recognized that another type of double patenting can occur even where the inventions claimed in two or more patents are considered nonobvious over each other. *Id.*

Under the holding in *In re Schneller*, 397 F.2d 350, 355 (C.C.P.A. 1968), the controlling fact in determining nonobviousness-type double patenting is whether the invention of the second patent is fully disclosed in, and covered by, the claims of, the first patent. If this is so, and there was nothing to prevent the patentee from obtaining the later claims in the first patent, and there is no terminal disclaimer, the rule against double

patenting must be applied. *Id.*; MPEP, 6th Edition, Chapter 800, p. 800-21, Rev. 1, Sept. 1995.

The holding of *In re Schneller* applies even when the inventions claimed in two patents "are considered nonobvious over each other." MPEP, 6th Edition, Chapter 800, p. 800-21, Rev. 1, Sept. 1995. For this reason, objective indicia of nonobviousness are not relevant to a consideration of double patenting under *In re Schneller*.

587809

18